HAROLD RAY HALL

*v.*

JOHN PROTAN, *Sheriff of Boone County,*
BOONE COUNTY CIVIL SERVICE COMMISSION,
JERRY COOK, *etc. et al.*

(No. 13326)

BETHEL MILLER

*v.*

JOHN PROTAN, *Sheriff of Boone County,*
BOONE COUNTY CIVIL SERVICE COMMISSION,
JERRY COOK, *etc. et al.*

(No. 13327)

CLARENCE WEAVER

*v.*

JOHN PROTAN, *Sheriff of Boone County,*
BOONE COUNTY CIVIL SERVICE COMMISSION,
JERRY COOK, *etc. et al.*

(No. 13328)

Submitted February 27, 1973.        Decided April 3, 1973.

*John L. Boettner, Jr.,* for relators.

*Leo Catsonis, Mat D. Bouldin,* Prosecuting Attorney, Boone County, for respondents.

SPROUSE, JUDGE:

In each of these three proceedings in mandamus instituted in this Court pursuant to its original jurisdiction, each of the relators seeks to require the respondents John Protan, Sheriff of Boone County, The Boone County Civil Service Commission and its members, Jerry Cook, Gus Shaffer, and E. W. Richards to reinstate each of the relators to the position of Deputy Sheriff of Boone County.

Although some of the facts are in dispute and vary in each case, the legal questions involved are substantially identical. Counsel, by agreement and with the consent of this Court, combined the three cases for argument and submission.

Effective July 1, 1971, the Legislature of this State enacted Chapter 7, Article 14 of the Code of West Virginia, 1931, as amended, establishing civil service for deputy sheriffs of the counties, which hereafter in this opinion is referred to as the Deputy Sheriffs' Civil Service Act or the Act. The Act is comprehensive and among other things contains provisions relating to the manner in which the deputy sheriffs holding office prior to the effective date of the Act are retained. The three relators in this case were employed by the Sheriff of Boone County prior to July 1, 1971, the effective date of the Act, and the dispute involving each of them revolves around the provisions relating to their retention or nonretention.

The facts concerning each relator will be discussed separately.

Harold Ray Hall alleges he was appointed to the position of deputy sheriff prior to the effective date of the Deputy Sheriffs' Civil Service Act. The respondents admit that Hall was appointed as an employee of the then Sheriff of Boone County, but allege that he was appointed and served in the capacity of a "jailer", performing non-law enforcement, administrative duties which they contend are not covered under the provision of the Deputy Sheriffs' Civil Service Act.

Chapter 7, Article 14, Section 9, Code, 1931, as amended, provides that deputies employed prior to the effective date of the Act shall be eligible to continue to serve until one year from the effective date, or until July 1, 1972, by which time they must have taken and passed an examination with at least a score of 60.

On June 24, 1972, Hall completed a written examination attempting to satisfy this provision in order to retain his position. He took the examination under protest, objecting to the validity of the examination on the grounds that the county civil service commission had failed to issue rules and regulations for such examinations and had refused to establish a training program under the provision of Chapter 7, Article 14, Section 9 of the Code, 1931, as amended. Hall scored 40 points on the examination, less than the minimum requirement of 60. Ed Cooke was the Sheriff of Boone County at that time, and Hall was not retained by Cooke after he failed the examination.

Hall was permitted by the Boone County Civil Service Commission to take another examination in October, 1972. He passed the October examination. Between July 1, 1972, and the time that Hall took the examination in October, 1972, Sheriff Cooke requested and was furnished a list of eligible potential employees from the civil service commission. Hall was not included in the list because he had not passed the June examination. Cooke made no request for a list of eligibles after Hall passed

the examination in October, 1972. The county civil service commission in the meantime, however, certified Hall as eligible for reappointment subject to the successful completion of a second examination. The respondent, incumbent Sheriff John Protan, took office in January, 1973. He contends that Hall never requested reinstatement. The county civil service commission contends that it is ready and willing to afford Hall an appeal, but that Hall has not pursued an appeal to the Commission; rather, he has pursued a remedy by way of mandamus to this Court.

The relator, Bethel Miller, was a deputy sheriff in Boone County prior to July 1, 1971, but refused to take the examination offered on June 24, 1972, and did not take the examination prior to July 1, 1972. In the early part of June, 1972, he was advised of the examination by the then Sheriff and gave no reason for not taking it.

The examination was obtained by the Boone County Civil Service Commission from the State Civil Service Commission and was a standard examination administered in other parts of the State. However, prior to and at the time of the examination, no rules and regulations concerning the giving of the examination had been promulgated by the Boone County Civil Service Commission. On October 2, 1971, more than a year after the effective date of the Deputy Sheriffs' Civil Service Act, the relator successfully completed a written examination and continued as Chief Field Deputy under the then Sheriff Ed Cooke.

On January 2, 1973, Miller was discharged from his position by the respondent, incumbent Sheriff John Protan, for failure to qualify for the position pursuant to provisions of Section 9 and Section 16, Article 14, Chapter 7, Code, 1931, as amended, and for the further reason that he had been engaged in political activities. Miller alleges that the Boone County Civil Service Commission refused to grant him a hearing, but the respondent civil service commission contends that they

have offered him a hearing and stand ready and willing to hear his case.

Clarence Weaver was appointed deputy sheriff of Boone County prior to July 1, 1971. He successfully completed the required examination on June 24, 1972. On July 1, 1972, the then Sheriff Cooke appointed Weaver Chief Jailer. On or about January 1, 1973, the respondent, incumbent Sheriff John Protan, discharged Weaver mistakenly assigning as one reason that he had not taken the required examination, and assigning as the second reason that Weaver had engaged in extensive political activity.

Weaver demanded a hearing before the Boone County Civil Service Commission by letter dated January 3, 1973, and a representative of the Commission advised Weaver that he could have a hearing within ten days. The Commission contends that Weaver refused to pursue a hearing before the county civil service commission, contending he proceeded by way of mandamus to this Court. The respondents also contend that Weaver's position in Boone County was not that of a deputy sheriff, but that of a Chief Jailer who was engaged in non-law enforcement activities not covered by Chapter 7, Article 14, Code, 1931, as amended.

The respondent civil service commission and its individual members contend that they have attempted in the past to comply with the requirements of Chapter 7, Article 14 relating to the establishment of rules and regulations and a training program, but there has been some confusion concerning the type of training program necessary. They also indicate that they did not appear to contest the previous mandamus issued by this Court in Case No. 13219 because they were under the impression that it had been withdrawn by the relators. They aver that the action ordered by that writ of mandamus (the establishment of rules and regulations and a training program) has now been fully implemented by the Commission.

It is obvious that the lack of rules and regulations concerning the administering of an examination might well prejudice an applicant who may or may not be placed in peril by having to respond "in the blind" to examination procedures. The civil service commission on the other hand contends that the examination was obtained from the State Civil Service Commission and is the same as administered throughout the State by county civil service commissions and that they in good faith attempted to comply with the provisions of the Act. Whether or not this is so, and whether or not the relators have been prejudiced by the procedures, should be fully developed at an evidentiary hearing.

Miller did not take the examination until after the one year automatic retention period had expired. He was thereafter appointed Chief Field Deputy, a position not covered by civil service. Hall likewise did not pass the examination until after the automatic one year retention period had expired. According to respondent Protan, Hall never asked to be reinstated as a deputy sheriff.

The respondents contend that both Hall and Weaver were outside of the protection of the Act, inasmuch as they were jailers and the duties they performed did not meet the definition of deputy sheriff as required by the Act.

The respondent Sheriff Protan in dismissing both Weaver and Miller asserted in discharging them that they had been engaged in partisan political activities in violation of the Deputy Sheriffs' Civil Service Act. Chapter 7, Article 14, Section 15 prohibits political activities on the part of deputy sheriffs and sets up procedures by which private citizens of the county may file petitions before the civil service commission requesting removal for such actions. Section 15 describes the nature of the proceedings and hearings that must be had and provides an appeal from the rulings of the commission. Chapter 7, Article 14, Section 17 provides that the sheriff may discharge a deputy for just cause which

shall not be political except as provided in Section 15. Construing Section 17 and Section 15 in *pari materia,* it would appear that the Legislature intended two methods of instituting removal procedures against a deputy sheriff for political activity. In an action instituted by the sheriff, he is required under the language of Section 17 with its reference to Section 15, to provide this information to the civil service commission who then, after proper notice and other procedural safeguards as set out in Section 15, shall conduct a hearing. It does not appear that respondent Protan has complied with these procedures.

A writ of mandamus will not issue unless three elements coexist: (1) the existence of a clear legal right to the relief sought, (2) the existence of a legal duty on the part of the respondents to do the thing which the petitioner seeks to compel, and (3) the absence of another adequate remedy at law. *Fairlawns Homes, Inc. v. The City of Morgantown,* 155 W.Va. 172, pt. 1 Syl., 182 S.E.2d 48; *State ex rel. Kucera v. The City of Wheeling,* 153 W.Va. 538, pt. 2 Syl., 170 S.E.2d 367; *State ex rel. Hercules Tire & Rubber Supply Co. v. Gore,* 152 W.Va. 76, 159 S.E.2d 801; *State ex rel. Damron v. Ferrell,* 149 W.Va. 773, 143 S.E.2d 469.

In view of the allegations of the respondent civil service commission that they stand ready and willing to afford the relators a hearing, the relators have failed to show a clear legal right to the relief sought and have not fully exhausted their adequate, administrative remedy. *State ex rel. Jones v. City of Nashville,* 198 Tenn. 280, 279 S.W.2d 267.

Although the allegations of political activity on the part of Miller and Weaver have not been presented in a procedurally correct manner, there are numerous other evidentiary and procedural disagreements presented in this mandamus proceeding. The relators have an adequate forum for resolving these issues before the Boone County Civil Service Commission. There does not appear to exist a clear legal right to the relief sought until these issues

are resolved by the appropriate fact finding body. Finally it is clear that a hearing before that body and the appeals available from its decisions provide an adequate remedy at law.

At the time the appropriate issues are resolved before the civil service commission, any allegations of political activity on the part of the relators should be properly presented with procedural safeguards to the deputies under the provisions of 7-14-15, Code, 1931, as amended.

When all the factual and procedural issues have been developed of record, appellate procedures could then be implemented sensibly to interpret the provisions of the new statute.

For reasons stated in this opinion, the writ of mandamus in each of these three cases is denied.

*Writs denied.*