TRAVERSE CORPORATION, ETC.

*v.*

IRA S. LATIMER, JR.,

*etc., et al.*

(No. 13424)

Decided May 21, 1974.

*Larry L. Skeen* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *James E. Sago,* Assistant Attorney General for respondents.

SPROUSE, JUSTICE:

The petitioner in this original proceeding in mandamus is Traverse Corporation, an oil and gas exploration and development concern, which claims a right to drill oil and gas wells in the Canaan Valley State Park. It seeks a writ alternatively requiring the respondents, Ira S. Latimer, Jr., Director of the Department of Natural Resources, Robert L. Dodd, Deputy Director of the Oil and Gas Division of the Department of Mines, and Thomas E. Huzzey, Commissioner of the Oil and Gas Conservation Commission, to take appropriate action to grant the petitioner a permit to drill a gas well in the Canaan Valley State Park, or requiring the respondent Latimer to institute proceedings against Traverse Corporation, or its assignor, to condemn the oil and gas leases to the park acreage. The

petition was filed in this Court on October 16, 1973, and on November 8, 1973, a rule was issued against respondents, returnable January 8, 1974, ordering them to appear and show cause why a writ should not issue against them. The respondents appeared on the last mentioned date and filed a joint answer. Counsel for all parties presented oral arguments and filed briefs.

In 1964, Mina Corporation, a leasing company, obtained oil and gas leases from a number of individuals for their oil and gas interests in lands situate in Canaan Valley, Tucker County, West Virginia. In the same year, Mina Corporation sold and assigned these oil and gas leases to Texas Eastern Transmission Corporation, hereinafter referred to as TETCO. After all of the leases were assigned to TETCO, the State of West Virginia, through the Department of Natural Resources, began acquiring lands by voluntary conveyance or by condemnation in the Canaan Valley, including some of the land under lease to TETCO. The purpose of the land acquisition was for the establishment of Canaan Valley State Park. The state park area is, or was, approximately 6,500 acres. TETCO had approximately 35,000 acres in that area under lease, and approximately 3,050 acres lay within the proposed park area. The State of West Virginia did not acquire these oil and gas leases when it obtained its title to the property. TETCO, on June 21, 1973, by a "farm out" agreement, granted Traverse Corporation the right to drill a test well on a 2,500 acre site of Traverse's choice within the TETCO Canaan Valley acreage, which was to be drilled within six months from the date of the execution of the agreement. Traverse subsequently chose the acreage, and all or part of it is within the park.

Traverse Corporation, complying with statutory requirements, on October 4, 1973, filed an application for a drilling permit with the Oil and Gas Division of the Department of Mines and with the Commissioner of the Oil and Gas Conservation Commission of the State of West Virginia. On October 12, 1973, petitioner was informed

that its application for a drilling permit was denied. Petitioner alleges it was informed that the permit was refused for two reasons: (1) For failure to obtain a written consent and easement from the surface owners as required by Chapter 22, Article 4A, Section 7(b) (4), Code, 1931, as amended; (2) that the respondent Ira S. Latimer ruled against issuing the drilling permit as being prohibited by Chapter 20, Article 4, Section 3, Code, 1931, as amended.

Code, 1931, 20-4-3, as amended, requires that the Director of Natural Resources, "* * * insofar as is practical, maintain in their natural condition lands that are acquired for and designated as state parks, and shall not permit public hunting, the *exploitation of the minerals* or harvesting of timber thereon for commercial purposes." (Italics supplied.)

Code, 1931, 22-4A-7, as amended, entitled "Drilling units and the pooling of interests in drilling units in connection with deep oil or gas wells", sets out the requirements for pooling and drilling in a pooled unit. The administration of that section is under the jurisdiction of the Oil and Gas Conservation Commission. The petitioner contends that this section has no application to drilling permits for a test well but pertains only to pooling agreements after a test well is drilled. Alternatively it contends that Section 7(b) (4), if it were applicable, is unconstitutional as depriving petitioner of his property without due process of law and as impairing contractual rights acquired prior to the effective date of this enactment. The petitioner further contends that the granting of the permit on its application is controlled by the provisions of Code, 1931, 22-4-1k, as amended, rather than 22-4A-7(b) (4). It urges that 22-4-1k imposes upon the Deputy Director of the Oil and Gas Division of the Department of Mines a non-discretionary duty to grant a drilling permit upon proper application.

Code, 1931, 22-4-1k, as amended, sets forth the requirements for application for a permit to be issued by the

Deputy Director of the Department of Mines and contains the following pertinent language:

> "It shall be unlawful for any well to be drilled, redrilled, deepened, fractured, stimulated, plugged, pressured, converted, combined or physically changed to allow the migration of fluid from one formation to another unless a permit therefor has been issued by the department. An application for any such permit shall be filed with the deputy director and shall contain the following:"

There follows a description of the information to be furnished by the applicant and other requirements, including approval from the Director of the Department of Natural Resources where a pollution problem may exist.

Respondents, in their answer, state that TETCO agreed on March 11, 1969, not to locate any wells within the boundaries of Canaan Valley State Park, and by reason of that agreement the petitioner has no clear legal right to maintain this action. The respondents also argue that the petitioner has no legal status to maintain this petition because the agreement between TETCO and Traverse gave Traverse only the right to conduct drilling operations for a period of six months after June 21, 1973, which time had expired by the time the case was argued before this court.

It is not necessary to consider the respondents' contention concerning the petitioner's status to maintain this action, except to say it appears that Traverse had whatever right TETCO had, if any, to drill a test well on park property.

The petitioner's arguments concerning the application of Code, 1931, 20-4-3; Code, 1931, 22-4-1k; and Code, 1931, 22-4A-7 (b) (4), as amended, are well presented, and may have had decisive force if applied to different circumstances. The issue in this controversy, however, is determined solely by the contract of March 11, 1969 between TETCO and the Department of Natural Resources. The ultimate question is whether TETCO therein gave up all rights to drill gas wells within the park boundaries.

In 1966, an official of TETCO corresponded with the then Director of the Department of Natural Resources in an effort to consolidate TETCO's interest in the Canaan Valley area. It is clear from this correspondence that TETCO, at that time, desired to avoid any confrontation with the State of West Virginia over any right to drill on state park property, and proposed an agreement to avoid such confrontation. The proposal, dated July 15, 1966, in essence proposed to lease the entire park area on a "non-drilling basis" (TETCO already had the leases to approximately 3,050 acres.) TETCO specifically proposed not to drill on park land, but would drill on privately owned adjacent land. The wells would be drilled outside the state park on private property adjacent to it, draining the oil and gas from reservoirs lying underneath the state park area.

The TETCO proposal of July 15, 1966, contained the following language:

"* * * Texas Eastern would like to lease the area of 6,500 acres to be embraced in the new state park from the State of West Virginia on a non-drilling basis. * * *

"The lease would also provide that no well be drilled or oil and gas operations be conducted within the boundaries of the state park but that the leased premises or any part thereof may be unitized with adjoining privately owned lands into units containing approximately 600 acres each. Since no well may be drilled on lands designated for state park purposes, the unit wells would be drilled upon private lands adjacent to the park. In the event of production the State would receive such proportion of the lessor's 1/8 as the acreage owned by the State included within the unit bears to the total acreage in the unit. * * *

"* * * So long as the land is used for a state park the minerals underlying the same cannot be exploited commercially and there is the possibility that those minerals may be drained by oil and gas productions on adjacent privately owned lands.

By entering into a non-drilling lease with Texas Eastern Transmission Corporation, the Department of Natural Resources could benefit from the presence of oil and gas without violating the provisions of the statutes of West Virginia."

Respondents urge us to consider the 1966 TETCO proposal for assistance in interpreting the 1969 agreement. TETCO's 1966 proposal to the Department of Natural Resources certainly made their purposes then abundantly clear. The earlier document cannot be considered, however, nor is it necessary for an understanding of the 1969 contract.

"An unambiguous written contract entered into as the result of verbal or written negotiations will, in the absence of fraud or mistake, be conclusively presumed to contain the final agreement of the parties to it, and such contract may not be varied, contradicted or explained by extrinsic evidence of conversations had or statements made contemporaneously with or prior to its execution." Point 2 Syllabus, *Kanawha Banking and Trust Company v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225.

The 1969 agreement is a simple document. A careful reading of it compels the conclusion that the Department of Natural Resources agreed to permit TETCO to drain oil and gas from beneath the entire park acreage in consideration of TETCO's promise and agreement not to drill any oil or gas wells within the boundaries of the state park. Petitioner contends that the agreement by TETCO not to drill oil and gas wells within the state park was meant to apply only to that acreage lying in the 640 acre unit. We cannot interpret the contract in that manner. The agreement states: "* * * TETCO desires to secure the ratification and approval of the Department of Natural Resources * * *, *it being understood that no well will be drilled within the boundary of the State Park by TETCO or its assignees."* The agreement further states: "The Department of Natural Resources of the State of West Virginia does hereby authorize and approve the foregoing unit designation *upon the express condition that no*

*wells shall be located within the boundaries of the Canaan State Park \* \* \*."* Important to the understanding of the meaning of the parties, is the following language permitting TETCO, by drilling on this 640 acre unit, to drain gas from underneath the entire Park: "\* \* \* and does hereby release TETCO from any liability for drainage or non-development of other lands or lease lying within the boundary of said State Park."

The agreement is clear and unambiguous. It was signed by the Director of the Department of Natural Resources, and by the Senior Vice-President, and Assistant Secretary of TETCO. It was not a document drawn nor executed by amateurs, but by individuals, representing each side of the agreement, who are presumably experts in their field. TETCO was acting within its area of expertise. It can be assumed from the statement in their petition defining their operation that they execute these agreements day after day both in West Virginia and throughout the United States. It can be assumed that the parties knew what they were doing. The agreed wells could drain the entire Canaan Valley State Park. The language dealing with the exclusion of wells was not limited to a part of the Park, but in two instances, in a three-page document, stated: "\* \* \* no well will be drilled within the boundary of the State Park \* \* \*" and, "\* \* \* upon the express condition that no wells shall be located within the boundaries of the Canaan State Park \* \* \*".

A writ of mandamus will not issue unless three elements coexist: (1) A clear legal right to relief sought; (2) a legal duty on the part of the respondents to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy at law. *Hall v. Protan,* 156 W.Va. 562, 195 S.E.2d 380; *Fairlawns Homes, Inc. v. City of Morgantown,* 155 W.Va. 172, 182 S.E.2d 48.

To entitle one to a writ of mandamus, the petitioner must show a clear legal right and a corresponding duty on the respondent to perform the act demanded. *State ex rel. Board of Education of the County of Kanawha v.*

*Johnson,* 156 W.Va. 39, 190 S.E.2d 483; *State ex rel. Cooke v. Jarrell,* 154 W.Va. 542, 177 S.E.2d 214. The right cannot be established in the proceeding itself, the proceeding is merely the vehicle by which it is enforced. *State ex rel. Booth v. Board of Ballot Commissioners of Mingo County,* 156 W.Va. 657, 196 S.E.2d 299; *State ex rel. Jarrell v. Walker,* 145 W.Va. 815, 117 S.E.2d 509; *State ex rel. Graney v. Sims,* 144 W.Va. 72, 105 S.E.2d 886.

Inasmuch as the petitioner's predecessor, TETCO, has a binding agreement with the Department of Natural Resources not to drill gas wells within the Canaan Valley State Park, it is not necessary for the Department to obtain the leases either by purchase or condemnation. Likewise, the respondents have no duty to issue a permit, and the petitioner has no clear legal right to have the permit issued for the drilling of gas wells.

The writ, therefore, is denied, and the rule heretofore issued in this proceeding will be discharged.

*Writo denied.*