326 S.E.2d 705

**The DAILY GAZETTE CO., INC., Petitioner,**

v.

**The COMMITTEE ON LEGAL ETHICS OF THE WEST VIRGINIA STATE BAR, Respondent.**

**No. 16403.**

Supreme Court of Appeals of West Virginia.

Dec. 11, 1984.

Rehearing Refused Jan. 10, 1985.

Dissenting Opinion Feb. 15, 1985.

DiTrapano & Jackson, Rudolph L. DiTrapano, Rebecca A. Baitty, Charleston, for petitioner.

Robert H. Davis, Jr., John A. Rogers, Charleston, for respondent.

McGRAW, Justice:

This mandamus action arises from a disciplinary action against Weirton attorney Leonard Z. Alpert. The petitioner, The Daily Gazette Company, Inc., sought to compel the respondent, the Committee on Legal Ethics of the West Virginia State

Bar, to release information concerning its investigation of Alpert made pursuant to this disciplinary action. Because Alpert agreed, however, on July 5, 1984, to the release of the record in his disciplinary proceeding, the petitioner's request is rendered moot. Nevertheless, important issues raised by the petitioner remain concerning the confidentiality of records relating to attorney disciplinary proceedings conducted by the respondent. Essentially, as phrased by the petitioner, the greater issue in the present proceeding is whether the respondent must "open its disciplinary procedures to public scrutiny." Although the issue of public access to the record in Alpert's disciplinary proceeding is now moot, a brief discussion of the facts surrounding his case is warranted to illuminate the impetus behind the petitioner's request for prospective relief and to provide a context for analysis of the issue of public access.

I

On February 6, 1979, Alpert was indicted on federal racketeering charges. Alpert's trial, involving charges that he had paid the Hancock County sheriff $2,500 in exchange for the return of six slot machines which had been confiscated and were to be destroyed pursuant to court order, received extensive publicity through the State of West Virginia. Eventually, Alpert was ac-

quitted of all charges. In March 1981, however, the federal district judge who presided over Alpert's case released evidence concerning Alpert to the Committee on Legal Ethics, which was conducting its own investigation of whether disciplinary action should be taken in response to potential ethical violations incident to the allegations of criminal misconduct.

Following the transmittal of evidence to the Committee on Legal Ethics, the petitioner requested information on numerous occasions concerning the disposition of any ethical charges against Alpert. Not only did the Ethics Committee steadfastly refuse to disclose such information, it would not even confirm or deny that an investigation had been initiated. This refusal was based upon article VI, § 30 of the West Virginia State Bar By-Laws, which provides that, except in certain circumstances,[1] all information regarding attorney disciplinary proceedings is confidential.

■ As a result of Alpert's voluntary waiver of confidentiality, the respondent has released the information sought by the petitioner regarding his disciplinary action. What remains, however, is the fundamental issue of the right of public access to information regarding attorney disciplinary proceedings conducted by the Committee on Legal Ethics of the West Virginia State Bar.[2]

1. The general exceptions to this confidentiality rule are: (1) when a recommendation for public discipline is filed with this Court by the Ethics Committee; (2) when the lawyer who is the subject of Ethics Committee action requests public disclosure; or (3) when the Ethics Committee investigation is predicated upon a criminal conviction of the subject lawyer. See West Virginia State Bar By-Laws art. VI, § 30.

2. As a preliminary procedural note, we agree with the respondent that this Court has consistently held that a writ of mandamus may not issue unless three elements coexist: (1) a clear legal right of the petitioner to the relief sought; (2) a legal duty on the part of the respondent to perform the act which the petitioner seeks to compel; and (3) the absence of another adequate remedy. See, e.g., State ex rel. Ginsberg v. Naum, 173 W.Va. 510, 318 S.E.2d 454 (1984); State ex rel. Mason v. Roberts, 173 W.Va. 506, 318 S.E.2d 450 (1984); Vanmeter v. Department of Motor Vehicles, 173 W.Va. 129, 313 S.E.2d 405 (1984); Cooper v. Gwinn, 171 W.Va. 245, 298 S.E.2d 781 (1981); State ex rel. Cabell County

Deputy Sheriff's Ass'n v. Dunfee, 163 W.Va. 539, 258 S.E.2d 117 (1979); McGrady v. Callaghan, 161 W.Va. 180, 244 S.E.2d 793 (1978); Traverse Corporation v. Latimer, 157 W.Va. 855, 205 S.E.2d 133 (1974); Hall v. Protan, 156 W.Va. 562, 195 S.E.2d 380 (1973); State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969); State ex rel. Damron v. Ferrell, 149 W.Va. 773, 143 S.E.2d 469 (1965).

We disagree, however, with the respondent's contention that these mandamus prerequisites are absent in this case. First, concerning the question of whether the petitioner meets the requirements of standing imposed upon those seeking relief through mandamus, this Court has consistently held that the enforcement of a public right may be sought by anyone who shares a common interest in that right with the public at large. See, e.g., Prichard v. DeVan, 114 W.Va. 509, 172 S.E. 711 (1934); Payne v. Staunton, 55 W.Va. 202, 46 S.E. 927 (1904); State ex rel. Matheny v. County Court, 47 W.Va. 672, 35 S.E. 959 (1900); Brown v. Randolph County

## II

Under West Virginia Constitution art. VIII, § 3, which provides that "The court shall have power to promulgate rules ... for all of the courts of the State relating to ... practice and procedure, which shall have the force and effect of law," [3] and under West Virginia Constitution art. V, § 1, which provides that "The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others," the Supreme Court of Appeals is vested with the exclusive authority to regulate and control the practice of law in this State.[4] *See e.g., State ex rel. Quelch v. Daugherty,* 172 W.Va. 422, 306 S.E.2d 233 (1983); *Lane v. State Board of Law Examiners,* 170 W.Va. 583, 295 S.E.2d 670 (1982); *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982); *Committee of Legal Ethics v. Graziani,* 157 W.Va. 167, 200 S.E.2d 353 (1973); *West Virginia State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). To assist in the execution of this regulatory function, the Legislature has created "an administrative agency of the supreme court of appeals of West Virginia, which shall be known as 'the West Virginia State bar.' " [5] West Virginia Code § 51–1–4a(b) (1981 Replacement Vol.). Although a creature of an antique statute enacted prior to the Judicial Reform Amendment of 1974, the West Virginia State Bar is an agency of the Supreme Court of Appeals, and not an independent agency. In *State ex rel. Quelch v. Daugherty,* 172 W.Va. at 424, 306 S.E.2d at 235, this Court restated the well established principle that, "The Judicial Branch may honor legislative enactments in aid of judicial power, but is clearly not bound to do so." (Citations omitted). Although we value the guidance of statutory enactments with regard to the exercise of judicial power, we are clearly not bound by statute. The statute, however, does provide some guidance with respect to further duties of West Virginia State Bar. Specifically, the West Virginia State Bar is charged with "enforcing such rules as may be prescribed, adopted and promulgated by the court from time to time under this section." *Id.* One area of rulemaking contemplated by this statute is "[p]rescribing procedure

Court, 45 W.Va. 827, 32 S.E. 165 (1899); *Doolittle v. County Court,* 28 W.Va. 158 (1886). The petitioner's interest in the relief sought in this case is shared by all who benefit from the public right, and no special or pecuniary interest of the petitioner must be shown. *State ex rel. Barker v. Manchin,* 279 S.E.2d 622 (W.Va.1981); *Myers v. Barte,* 279 S.E.2d 406 (W.Va.1981); *State v. Davis,* 76 W.Va. 587, 85 S.E. 779 (1915).

Second, on the question of the existence of a legal duty on the part of the respondent, we note that we have consistently held that mandamus may be used to attack the constitutionality or validity of a statute or ordinance. *See, e.g., Myers v. Barte,* 279 S.E.2d 406 (W.Va.1981); *State ex rel. McCamic v. McCoy,* 276 S.E.2d 534 (W.Va.1981); *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W.Va. 636, 171 S.E.2d 545 (1969); *State ex rel. Greenbrier County Airport Authority v. Hanna,* 151 W.Va. 479, 153 S.E.2d 284 (1967); *State ex rel. Sheldon v. City of Wheeling,* 146 W.Va. 691, 122 S.E.2d 427 (1961). The By-Laws and Rules of the State Bar are promulgated and adopted by this Court under its inherent and constitutional rule-making authority. Such By-Laws and Rules have the force and effect of a statute. *See* West Virginia Constitution art. VIII, § 3; *see also Crusenberry v. Norfolk & Western Ry.,* 155 W.Va. 155, 180 S.E.2d 219 (1971), *overruled on other grounds,* 164 W.Va. 488, 264 S.E.2d 450

(1980); *In re Mann,* 151 W.Va. 644, 154 S.E.2d 860 (1967). Like any other statute, these By-Laws and Rules are subject to constitutional scrutiny.

Finally, as for the third mandamus element, respondent does not point to, nor do we find, any alternative legal remedy to which the petitioner could resort.

3. The reprint in a Michie's West Virginia Code vol. 1 (1982 Replacement Vol.) of this provision inadvertently omits one comma. The correct version of this provision, as enacted by the Legislature and ratified by the voters, can be found in 1974 W.Va.Acts 948–49.

4. *See also* West Virginia Code § 51–1–4a(e) (1981 Replacement Vol.) ("The inherent rule-making power of the supreme court of appeals is hereby declared.").

5. The State Bar By-Laws approved by this Court fund the agency by a privilege tax imposed annually upon all lawyers in the State as a prerequisite to practicing law. *See* W.Va. State Bar Const. art. III; W.Va. State Bar By-Laws art. II, § 3 and art. III, § 1. This is in sharp contrast to voluntary professional associations such as the American Bar Association, West Virginia Bar Association, Mountain State Bar Association, West Virginia Lawyers Guild, and the various county bar associations in the State.

for disciplining, suspending, and disbarring attorneys-at-law." West Virginia Code § 51–1–4a(c) (1981 Replacement Vol.). Therefore, the West Virginia State Bar, as an administrative arm of the Supreme Court of Appeals, is subject to the exclusive control and supervision of the Supreme Court of Appeals, including the approval of all regulatory and adjudicatory activities regarding attorney disciplinary proceedings.

Under article VI, § 30 of the West Virginia State Bar By-Laws:

All proceedings involving allegations of misconduct by or the disability of an attorney shall be kept confidential until and unless a recommendation for the imposition of public discipline is filed with the court by the committee on legal ethics, or the respondent attorney requests that the matter be public, or the investigation is predicated upon a conviction of the respondent attorney for a crime. All participants in the proceeding shall conduct themselves so as to maintain the confidentiality of the proceeding. Any person who violates the provisions of this section shall be guilty of contempt of the supreme court of appeals. Any committee member or any employee of the committee who violates this provision may be removed by the board.

Therefore, unless the Legal Ethics Committee recommends public discipline, the existence of charges against an attorney and the ultimate disposition of those charges are generally never made a matter of public record, but are forever cloaked in a veil of secrecy.[6]

The respondent defends this confidentiality rule on several grounds. First, the respondent notes that confidentiality discourages attempts to use the process as a threat in order to obtain an advantage in some collateral dispute. Second, the respondent states that confidentiality protects lawyers from unwarranted injury to their professional reputations resulting from frivolous or fabricated complaints. Third, the respondent contends that confidentiality restores a degree of the protection lost in the grant of libel immunity to attorney disciplinary complainants under article VI, § 43 of the By-Laws. Finally, the respondent asserts that confidentiality ensures that investigations into alleged unethical activity will not be impaired by premature publicity. Although these justifications are not wholly without merit, they are far outweighed by the public interest in access to attorney disciplinary proceedings.

III

As this Court stated in *Committee on Legal Ethics v. Mullins,* 159 W.Va. 647, 651, 226 S.E.2d 427, 428 (1976), "the primary purpose of the ethics committee is not punishment but rather the protection of the public and the reassurance of the public as to the reliability and integrity of attorneys...." *See also Committee on Legal Ethics v. Pence,* 161 W.Va. 240, 253, 240 S.E.2d 668, 675 (1977); *In re Eary* 134 W.Va. 204, 208–09, 58 S.E.2d 647, 650 (1950); *In re Echeles,* 430 F.2d 347, 349 (7th Cir.1970); *Maryland State Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974). Similarly, in *In re Brown,* 166 W.Va. 226, 273 S.E.2d 567, 570 (1980), this Court observed:

[w]oven throughout our disciplinary cases involving attorneys is the thought that they occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the evenhanded administration of justice. Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness. Because the legal system embraces the whole of society, the public has a vital expectation that it will be properly administered. From this expectancy arises the concept of preserving public confidence in the administration of justice by

---

6. While not before this Court in the immediate proceeding, we note that parallel provisions concerning professional discipline of physicians and podiatrists appear to impose similar restrictions upon public disclosure and access. *See* West Virginia Code §§ 30–3–6; 30–3–9(g), (h), (i) & (j); 30–3–14(h) (1984 Supp.). These restrictions are present in spite of the Legislature's declared purpose for enacting the Medical Practice Act—"to protect the public interest." West Virginia Code § 30–3–1 (1984 Supp.). *See also* West Virginia Code § 30–3C–3 (1984 Supp.).

disciplining those lawyers who fail to conform to professional standards. (footnote omitted.)

■■■ This unrefutable public interest in the administration of attorney disciplinary proceedings is related to the lawyer's role as an officer of the court. This special status which lawyers enjoy derives from both the required oath of office,[7] and mandatory membership in the bar of this State.[8] The privileges attendant to being licensed to practice as an "attorney at law" are not without concomitant obligations. These obligations include a fundamental public duty to assist the courts in the administration of law and resolution of legal controversy. *See State ex rel. McCamic v. McCoy*, 166 W.Va. 572, 276 S.E.2d 534, 536 (1981), *quoting, In re Eary*, 134 W.Va. 204, 208, 58 S.E.2d 647, 650 (1950). As officers of the court and licensed ministers of the system of justice, lawyers are accountable to the public for their conduct. Therefore, the principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice.

■■■ One fundamental aspect of our Anglo-American system of justice is its openness. In *State ex rel. Herald Mail Co. v. Hamilton*, 165 W.Va. 103, 267 S.E.2d 544, 547–49 (1980), this Court traced the common law origins of the "open courts" provision contained in our own and in other state constitutions. One reason for this provision, as was noted in *Hamilton*, 165 W.Va. at 110, 267 S.E.2d at 548, *quoting* 1676 *Charter of Fundamental Laws, of West New Jersey*, ch. XXIII, is to ensure "that justice may not be done in a corner nor in any covert manner." This Court further noted in *Hamilton*, 165 W.Va. at 109–110, 267 S.E.2d at 548, that:

The uniform interpretation of the mandate that the courts "shall be open" by those state courts called upon to construe the provision in their constitutions is that this language confers an independent right on the public to attend civil and criminal trials, and not simply a right in favor of the litigants to demand a public proceeding. (Citations omitted).

This fundamental constitutional right of access is not limited to formal trials, but extends to other types of judicial and quasi-judicial proceedings. For example, in *Hamilton*, 165 W.Va. at 116–117, 267 S.E.2d at 551, this Court recognized a public right of access to pretrial hearings in criminal cases. *See also Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (first amendment right of access to pretrial voir dire); *Sentinel Star Co. v. Edwards*, 387 So.2d 367 (Fla.App.1980) (common law right of access to posttrial hearing concerning juror interview); *Herald Co. v. Weisenberg*, 89 A.D.2d 224, 455 N.Y.S.2d 413 (1982), *aff'd*, 59 N.Y.2d 378, 465 N.Y.S.2d 862, 452 N.E.2d 1190 (1983) (right of access to unemployment compensation hearing); *In re Estate of O'Connell*, 90 Misc.2d 555, 394 N.Y.S.2d 816 (1977) ("open courts" statute requires examination of witness in will contest in surrogate's court to be public proceeding); *In re Petition of Daily Item*, 310 Pa.Super. 222, 456 A.2d 580 (1983) (right of access to preliminary hearings based upon "open courts" provision); *Cohen v. Everette City Council*, 85 Wash.2d 385, 535 P.2d 801 (1975) ("open courts" provision held to preclude sealing of transcript of city council's license revocation proceeding by court that reviewed transcript on appeal); *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis.2d 220, 340 N.W.2d 460 (1983) ("open courts" statute applied to voir dire proceedings).[9]

■■■ In Syllabus Point 2 of *Committee on Legal Ethics v. Graziani, supra*, this

---

**7.** *See* West Virginia Code § 30–2–3 (1980 Replacement Vol.).

**8.** *See* Constitution of the West Virginia State Bar art. III.

**9.** We note that the public's right of access is not absolute. Certain cases and exceptional circumstances may warrant limited closure. *See generally, Hamilton,* 165 W.Va. at 113–118, 267 S.E.2d at 550–52; *Globe Newspaper Co. v. Superior Ct.,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248, 257 (1982). However, the public's right of access should never be arbitrarily or summarily denied. When the closure issue arises, the trial court should make a careful inquiry into the matter, affording all interested parties an opportunity to be heard.

Court noted that, "Disciplinary proceedings are neither civil actions nor criminal prosecutions but are special proceedings which are peculiar in nature." *See also* Syl. pt. 2, *Committee on Legal Ethics v. Pence, supra; In re Brown,* 157 W.Va. 1, 7–8, 197 S.E.2d 814, 817–18 (1973). This unique nature of attorney disciplinary proceedings, however, does not exempt such proceedings from the requirements of West Virginia Constitution art. III, § 17. In fact, this uniqueness intensifies the desirability of openness and candor. Procedures governing professional discipline are emblematic of the character of a profession. Confidentiality favors insulating the legal profession from adverse publicity over the public interest in the proper administration of justice.[10] We therefore hold that under West Virginia Constitution art. III, § 17, which provides that "The courts of this State shall be open," there is a right of public access to attorney disciplinary proceedings. We must define, however, the parameters of this right.

### IV

We begin our analysis of the right of public access to attorney disciplinary proceedings by noting that Article VI, § 30 of the By-Laws imposes overly broad restrictions upon public access to ethics complaints and proceedings. The rule shrouds in secrecy that which is intended to be carried on for the public's benefit. The State, through its judicial branch, has the power[11] and the duty to require that those individuals licensed by the State to practice law live up to the professional standards promulgated to protect the general welfare of the people, and to that end, "the public should know when attorneys, as officers of the court, are charged with disloyalty thereto. It is only through the possession of such knowledge that the people can intelligently deal with the members of the legal profession and intrust business to them." *Spriggs v. Cheyenne Newspapers,* 63 Wyo. 416, 451, 182 P.2d 801, 815 (1947).

Moreover, if the legal profession's practice of self-regulation is to remain viable, the public must be able to observe *for themselves* that the process is impartial and effective. We cannot simply expect the public to blindly accept that justice is being done. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 572, 100 S.Ct. 2814, 2825, 65 L.Ed.2d 973, 986 (1980).

The Committee on Legal Ethics is dominated by lawyers, who are charged with the responsibility of scrutinizing the conduct of other lawyers. Carrying on this process in secrecy "denies the public information that would demonstrate the profession's concern for effective disciplinary enforcement and show the steps taken by the bar to maintain its integrity." ABA Special Committee on Evaluation of Disciplinary Enforcement, Problems and Recommendations in Disciplinary Enforcement

---

**10.** The observations of one commentator aptly characterized the unfortunate tendency of the legal profession to place its own interests above the interest of those who are supposed to be the primary beneficiaries of the profession's self-policing efforts:

> Professional discipline is the common field on which the legal profession meets the public and accounts to it. No relations with this public are worth a penny unless they are fair and frank. In performing the function of professional discipline lawyers must consider ourselves as members of the public judging someone within the context of the legal profession. This balance perhaps requires a measure of detachment and fearlessness that is difficult to attain. But we cannot be as the boy who went to Sunday school with two nickels given him by his mother: one for the collection and one for some candy on the way home. On his way to the church he looked eagerly in the window of the candy store and one of the nickels dropped from his hand through a grating in the sidewalk, out of sight. Sadly he looked down and said, "God, I'm sorry I lost your nickel." We cannot lose the public's nickel in professional discipline, for if we do we have lost the possession that makes our profession unique—our right to self-government and self-discipline.

Allen, Richard B., "Goals of Professional Discipline," *Florida Bar Journal,* June 1983, at 380.

**11.** *See Dent v. State of West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889).

(1970) at 143.[12] Disciplinary proceedings are "an increasingly important method of demonstrating the trustworthiness of the legal profession and ensuring the effectiveness of the judicial process." *McLaughlin v. Philadelphia Newspapers, Inc.*, 465 Pa. 104, 127, 348 A.2d 376, 388 (1975) (Roberts, J., dissenting); *see also Philadelphia Newspapers, Inc. v. Disciplinary Board*, 468 Pa. 382, 388–90, 363 A.2d 779, 782–83 (1976) (Roberts, J., dissenting) (only products of unnecessary secrecy in bar proceedings are the suspicion and mistrust of the public); *Sadler v. Oregon State Bar*, 275 Or. 279, 550 P.2d 1218 (1976).

## V

Article VI, § 43 of the By-Laws,[13] which is designed to encourage the filing of valid complaints, grants absolute libel immunity to complainants under the attorney disciplinary system, even to those who file groundless or malicious complaints. Therefore, we recognize that during the initial investigatory stage there is a valid interest in providing protection against unwarranted injury arising from unsupported complaints which are privileged under article VI, § 43 and thus, cannot be the subject of libel actions. Additionally, disclosure of facts regarding a complaint prior to the filing of formal charges can impair the investigatory function of the State Bar. However, as the Alpert case illustrates, if a case terminates in dismissal, either before or after the filing of formal charges, or with the issuance of a private reprimand, the confidentiality rule contained in article VI, § 30 generally prevents the public from *ever* learning of the existence of the complaint or charges, and the ultimate disposition thereof. Less restrictive means to protect the limited need for confidentiality do exist. The confidentiality rule, in three respects, impermissibly restricts public access.[14]

■ First, once it is determined that there is probable cause to issue a formal charge, the constitutionally recognized interests served by public disclosure outweigh any necessary restrictions upon access to information for the benefit of individual attorneys or the profession as a whole.[15] Therefore, in cases where formal

**12.** This ABA report, commonly referred to as the "Clark Report" (after its chairman, Tom C. Clark), went on to state that "[t]he public's dissatisfaction with the effectiveness of the disciplinary system may be attributed in part to the inadequacy in information made available concerning the existence of disciplinary agencies, the services they render and their accomplishments." *Id. See generally* Marks & Cathcart, *Discipline Within the Legal Profession: Is It Self-Regulation?* 1974 Ill.L.Forum 193.

**13.** Article VI, § 43 of the State Bar By-Laws states: "Any proceedings pending before said committee and any records or any testimony with respect thereto shall be absolutely privileged. The testimony given before the committee with respect to any investigation, complaint, or proceeding shall not be subject to discovery in any civil litigation."

**14.** We note that prior to and independent of the institution of this action by the petitioner, the State Bar, upon the request of the Chief Justice and the Court Administrator, prepared amendments to the confidentiality provisions of section 30 which would provide greater public access. Amendments to article VI, § 30 were subsequently submitted to this Court for approval. *See Petition to Amend Rules of Disciplinary Procedure in Article VI of the By-Laws of the West Virginia State Bar* (filed Sept. 11, 1984, in the office of the Clerk of the Supreme Court). These amendments provide for public access to complaints, reports, records and nondeliberative proceedings once formal disciplinary charges have been brought against an attorney. However, for reasons stated in this opinion relating to private reprimands and access to information concerning dismissals without charges, these proposed changes fail to satisfy the public access requirements of West Virginia Constitution art. III, § 17.

**15.** Analogizing the early stages of disciplinary procedures to the grand jury process, a former president of the American Bar Association stated in support of opening up the disciplinary process:

I would make disciplinary procedures public once we had passed the stage of adjudicating whether a complaint is frivolous. 90%–95% of the complaints made against lawyers, usually by a disgruntled client, are frivolous by their very nature because they grow out of an adversary system. My own experience is that most clients who lose still believe they were right; the court didn't convince them. They like their own lawyer because they saw he worked very hard and tried to do what they wanted done, and so they look around desperately for somebody to blame, never thinking "I was wrong." They tend to

disciplinary charges in an attorney disciplinary proceeding are filed, following a determination that probable cause exists to substantiate allegations of an ethical violation, the hearing on such charges shall be open to the public, who shall be entitled to all reports, records, and nondeliberative materials introduced at such hearing, must be publicly accessible, including the record of the final action taken.

■ Second, information regarding complaints dismissed without formal charges under article VI, § 12 of the By-Laws [16] is a necessary and vital component of the whole public process. While we recognize that there are reputational and investigatory justifications to restrict disclosure of information pertaining to complaints during the initial investigatory stage, those justifications are limited.[17] Under West Virginia Constitution art. III, § 17, the judicial branch and its agencies are required to be fully accountable to the public. Therefore, once a complaint of unethical conduct in an attorney disciplinary proceeding is dismissed for lack of probable cause, the public has a right of access to the complaint and the findings of fact and conclusions of law which are presented in support of such dismissal.

■ Third, it should be clear from the foregoing discussion that use of private reprimands by the State Bar as a method of official discipline is in direct contravention with the "open courts" provision of West Virginia Constitution art. III, § 17. The disciplining of attorneys is performed for the benefit of the public, and therefore "is the public business and should not be disposed of in other than a public manner." *In re Alley*, 256 Or. 51, 54–55, 470 P.2d 943, 945 (1970). Accordingly, we hold that the right of public access to attorney disciplinary proceedings precludes utilization of private reprimand as a permissible sanction.

Article VI, § 17 of the By-Laws sets out the available discipline alternatives, including the alternative of imposing private reprimands. Although we are scrutinizing provisions which are subject to revision upon this Court's order, the statutory construction principles embodied in the doctrine of "least intrusive remedy" as articulated and summarized in *In re Dostert*, 174

blame the other lawyer on the other side. They consider him unethical, concluding that he bought the judge or somebody else off.... Once out of the investigative body that determines probable cause for disciplinary action I would have it absolutely open, to the public, to the press, exactly as is a criminal trial. The finding of probable cause is tantamount in criminal proceedings to an indictment. A grand jury proceeding is, and should be secret, as should bar investigations of initial complaints. But once probable cause has been determined or an indictment or information has been returned so that there is enough to justify an adversary due process hearing, then I would make the remaining proceedings open.
*The Bar and Watergate: Conversation with Chesterfield Smith*, 1 Hastings Const.L.Q. 31, 35 (1974).

16. Article VI, § 12 of the By-Laws provides in the first paragraph that:
 Without issuing any notice or charges, such committee shall investigate or cause to be investigated by its subcommittee or by the proper grievance committee, to the extent deemed necessary, every complaint, request and information coming before it, and if after investigation the committee on legal ethics determines that the same does not merit disci-

plinary action, it shall dismiss the same. If after investigation the committee determines that the same may warrant disciplinary action, it shall give the accused attorney a written notice containing a plain statement of the charges against him and the fact that he is entitled to a formal hearing as provided in section thirteen of this article VI, which notice shall direct him to appear before the committee at a time and place to be designated therein and shall be served and executed on the accused attorney in accordance with the provisions of section thirty-nine of this article.

17. The reporting of the existence of groundless or frivolous complaints after there has been a decision to dismiss them as such poses no real threat to the reputations of attorneys. Moreover, information on the disposition of all complaints not only serves the objective of accountability, but also promotes a greater flow of information from the most substantial source of information pertaining to ethical violations, the public. Accountability for *all* decisions can only bolster confidence in this self-regulatory process, and at the same time, increase the likelihood of receiving information concerning attorney misconduct. *See* Steel & Nimmer, *Lawyers, Clients, and Professional Regulation*, 1976 Am.Bar Found. Research J. 919, 1004.

**368**

W.Va. 258, 324 S.E.2d 402 at 412–413 (1984), provide the most expeditious means to correct the constitutional defect contained in article VI, § 17 of the By-Laws. Therefore, rather than invalidating this section in its entirety, the unconstitutional reference to private reprimands is hereby severed.[18]

 In addition to the constitutionally defective By-Law provisions already touched upon, certain procedural provisions of the State Bar's Rules and Regulations are also in conflict with West Virginia Constitution art. III, § 17. Chapter III, § 10 of the Rules and Regulations provides that cases may be closed without providing an explanation of the reason for their disposition.[19] This regulatory assertion contradicts the most fundamental concepts of accountability. With respect to any judicial or quasi-judicial proceeding, the public must always be afforded "the opportunity to realize that there is a careful, reasoned and judicious decision-making process at work...." *State v. Gary*, 162 W.Va. 136, 138, 247 S.E.2d 420, 421 (1978); *see also Javins v. Workers' Compensation Commissioner*, 173 W.Va. 747, 320 S.E.2d 119, 132 (1984).[20]

Accordingly, we hold that the By-Laws and Rules and Regulations of the West Virginia State Bar which govern public disclosure of lawyer disciplinary matters are unconstitutional under West Virginia Constitution art. III, § 17, when they fail to protect and vindicate the public's interest in the integrity of the judicial system by unreasonably restricting access to information concerning formal disciplinary actions against lawyers, integral parts of the judicial system.

For the foregoing reasons, we grant a writ of mandamus ordering the respondent: (1) to conform its practices and procedures relating to public access to the requirements of West Virginia Constitution art. III, § 17 as set forth in this opinion in all future disciplinary cases; and (2) to submit to this Court for its promulgation new By-Laws and Rules and Regulations, where necessary, which fully comply with such requirements.[21]

Writ granted.

NEELY, Chief Justice, dissenting:

I dissent not so much to the majority's holding but rather to the tone of today's opinion. The Court this day implies that the Legal Ethics Committee of the West Virginia State Bar has somehow consciously gone about "shrouding its proceedings in secrecy" to avoid the public's (*vide* the press') scrutiny. Since its inception, the Legal Ethics Committee has served this Court, the bar, and the citizens of our state with admirable devotion to fairness and the truth. I think a firm handshake and the words "well done good and faithful servant" are more in order.

Now I do not necessarily disagree that at some point the public has a right to know about disciplinary proceedings against lawyers. However, I question whether unsub-

---

**18.** Also amenable to severability principles is the unconstitutional language contained in article VI, §§ 3 and 27 of the By-Laws. Specifically, we hereby invalidate and strike the entire second paragraph of article VI, § 8; and the last sentence of subsection (c) of article VI, § 27. Unfortunately, other unconstitutional provisions contained in the By-Laws and Rules and Regulations, by reason of their interdependent language, are not so expeditiously corrected and must be wholly invalidated and replaced.

**19.** Chapter III, § 10 of the Rules and Regulations, as amended February 3, 1984, states in full:

In all instances, when a case is to be closed, the entire file shall be forwarded to the executive director or bar counsel for safekeeping and an official notice of disposition on behalf of the state bar shall be provided to the complainant. The notice of disposition shall not be required to contain an explanation of the reasons for disposition or discussion of facts or evidence considered by the committee or bar counsel.

**20.** Sections 6 and 11 of Chapter III of the Rules and Regulations also fall short of the requirements of West Virginia Constitution art. III, § 17 to the extent they merely permit but do not require full public disclosure.

**21.** In view of the constitutional requirements which must be recognized, the respondent should submit these amendments directly to this Court. *See In re Daniel*, 153 W.Va. 839, 173 S.E.2d 153, 155 (1970); *In re Brown*, 164 W.Va. 234, 262 S.E.2d 444, 446–47 (1980).

stantiated charges, even given the exist-
ence of probable cause to initiate an inves-
tigation, ought immediately to be open to
the public. For example, a lawyer might
find himself in the position of being able to
defend himself against some charge only
by exposing material that ought to be kept
confidential. It would be preferable in my
opinion, to permit unrestricted public exam-
ination only after a case has been conclud-
ed by the Legal Ethics Committee.

Furthermore, in light of the fact that
newspapers are primarily, and by economic
necessity, in the entertainment business it
is not advisable to splatter unfounded alle-
gations against lawyers on the front page,
in bold headlines above the fold. Clients,
like nervous investors on the stock ex-
change, can be frightened all too quickly by
rumors. Therefore, I believe that the ma-
jority was too expansive in setting the "pa-
rameters" of the public's access to lawyer
disciplinary proceedings.