No. 18-0363 *Lawyer Disciplinary Board v. Doheny*

**FILED**

**June 7, 2024**

**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WOOTON, J., dissenting:

The respondent, Patrick Doheny, appears before this Court once again challenging the propriety of the discipline recommended by the Hearing Panel Subcommittee ("HPS") of the Lawyer Disciplinary Board. Although the HPS originally recommended that this Court dismiss his West Virginia reciprocal lawyer disciplinary proceeding, this Court directed the HPS to reconsider the recommended discipline after the majority found "no error in the [Office of Disciplinary Counsel's ("ODC")] decision to pursue this matter as a reciprocal disciplinary action." *Law. Disciplinary Bd. v. Doheny*, 247 W. Va. 53, 62, 875 S.E.2d 191, 200 (2022) ("*Doheny I*").

On remand, the HPS reluctantly changed its recommended discipline. While the current recommended discipline —an admonishment— represented a "unanimous" decision of the three member HPS, two of the three members submitted a concurring decision expressing profound disagreement with the majority opinion in *Doheny I* and noting that they were constrained by this Court's interpretation of the West Virginia Rules of Lawyer Disciplinary Proceeding in that case. Unfortunately, the majority has declined to revisit its prior erroneous ruling and again improperly finds that the ODC had authority to impose reciprocal

1

discipline based on Mr. Doheny's private reprimand in another jurisdiction. Accordingly, I respectfully dissent.

Consistent with my dissent in *Doheny I*, the process by which the ODC proceeded with Mr. Doheny's discipline is fatally flawed. Although the ODC could have proceeded with discipline against Mr. Doheny under Rule 3.19 of the West Virginia Rules of Lawyer Disciplinary Procedure,[1] it chose to forego the procedural protections provided under that rule and, instead, purported to institute *reciprocal* discipline under the abbreviated proceedings outlined in Rule 3.20. ODC offers no reasonable explanation for choosing this process, despite the fact that the discipline imposed elsewhere *cannot* be imposed in West Virginia. When we considered this matter previously, I stated:

> As per Rule 3.20(a) and (d), in reciprocal proceedings the Hearing Panel Subcommittee is permitted to take action without a formal hearing and the respondent may only challenge the *validity* of the disciplinary order in the foreign jurisdiction. Further, reciprocal discipline under Rule 3.20 makes no provision for a mitigation hearing as in Rules 3.18 and 3.19. Very clearly, the procedural protections afforded under Rules 3.18 and 3.19 differ meaningfully from the abbreviated proceedings outlined in Rule 3.20.

---

[1] *See* R. 3.19 (providing for disciplinary charges to be pursued based on attorney's felony conviction).

*Doheny I*, 247 W. Va. at 66, 875 S.E.2d at 204 (Wooton, J., dissenting). As such, reciprocal disciplinary proceedings provide a "short-cut" for ODC — one which it took at its own peril.

The plain language of Rule 3.20[2] limits our ability to impose reciprocal discipline to instances where a lawyer received *public discipline* elsewhere. Because the discipline instituted against Mr. Doheny in the State of Pennsylvania was a private reprimand, it is by definition not public discipline. W. Va. R. Law. Disciplinary Proc. 3.20(b). Accordingly, the ODC is not allowed to proceed under Rule 3.20 and avail itself of the truncated procedure afforded by that rule. Further, "[t]he provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure require the imposition of the *identical* sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established." Syl. Pt. 4, *Law. Disciplinary Bd. v. Post,* 219 W. Va. 82, 631 S.E.2d 921 (2006) (emphasis added); *See* W. Va. R. Law. Disciplinary Proc. 3.20 (e).[3] As I opined in *Doheny I*: "the

---

[2] Rule 3.20(b) provides, in pertinent part, that "[a]ny lawyer who is a member, active or inactive, of The West Virginia State Bar against whom *any form of public discipline* has been imposed by the authorities of another jurisdiction, whether state or federal . . . shall notify the Office of Disciplinary Counsel of such action in writing within ten days thereof." (Emphasis added).

[3] Rule 3.20(e) provides exceptions to the imposition of identical discipline in limited circumstances where:

requirement that reciprocal discipline procedures be limited to public discipline rendered elsewhere is a simple matter of practicality: because West Virginia does not recognize private discipline, rendering reciprocal, *identical* discipline in West Virginia is an impossibility." *Doheny I*, 247 W. Va. at 67, 875 S.E.2d at 205 (Wooton, J., dissenting); *see Daily Gazette Co. v. Comm. on Legal Ethics of the W. Va. State Bar*, 174 W. Va. 359, 326 S.E.2d 705 (1984) (holding private discipline of attorneys in West Virginia unconstitutional as violation of open courts provision in West Virginia Constitution art. III, § 17). The majority concedes that identical discipline was not available, notes that the ODC realized that it would need to "seek a different discipline because this Court has held that the West Virginia Constitution does not allow for the imposition of a private discipline," but suggests that the ODC could somehow cure this defect by providing Mr. Doheny with notice. I respectfully disagree.

---

(1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

Based upon my review, however, none of these circumstances are presently before this Court, nor does ODC argue that any are present. Notwithstanding, the majority concludes that it was appropriate for the Court to "find sua sponte that the underlying criminal misconduct itself requires a substantially different type of discipline."

4

I am acutely aware of the substantial responsibility that arises from the fact that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics of the W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). Although I respectfully consider the HPS's current recommendation, I am uniquely mindful that the HPS reluctantly recommended an admonishment due to the constraints imposed on it by this Court's decision in *Doheny I*. While "[t]he principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice," this Court also has an obligation to ensure that the lawyer is afforded due process of law and to guarantee that the ODC follows the Rules of Disciplinary Proceedings —rules of this Court's own making— in instituting discipline. *Compare Daily Gazette Co. Inc.*, 174 W. Va. at 360, 326 S.E.2d at 706, Syl. Pt. 3 (quoted above) with *Law. Disciplinary Bd. v. Stanton*, 233 W. Va. 639, 648, 760 S.E.2d 453, 462 (2014) ("We have recognized that in attorney disciplinary proceedings, a lawyer is entitled to due process of law. Generally, due process requires that the attorney be given notice of the allegations against him and an opportunity to be heard." (citation omitted)).

Despite Mr. Doheny's irresponsible criminal acts, I cannot sit idly by while the Court contorts its own rules. In a veiled attempt to justify the abandonment of our rules the majority opinion places significant emphasis on the injuries sustained

5

by Mr. Doheny's victim. Make no mistake – I do not condone Mr. Doheny's criminal behavior, nor do I minimize the injuries or the impact those injuries have had on his victim; however, neither of those justify the ODC's calculated decision to invoke the abridged disciplinary procedures afforded by Rule 3.20 rather than pursuing discipline in accordance with Rule 3.19. As the current HPS recommendation stems from the same flawed proceeding that I discussed in *Doheny I* and the majority remains steadfast in its tortured reading of Rule 3.20, I, once again, respectfully dissent.