705 S.E.2d 806

**CABOT OIL & GAS CORPORATION,**
Petitioner Below, Appellee,

v.

Randy **HUFFMAN**, Cabinet Secretary, West Virginia Department of Environmental Protection, Office of Oil and Gas, Respondent Below, Appellant,

v.

Lawson Heirs, Inc., Intervenor
Below, Appellee,

Sierra Club, Inc.; Cordie O. Hudkins; West Virginia Highlands Conservancy; Friends of Blackwater; and West Virginia Division of Natural Resources, Intervenors Below, Appellants.

Nos. 35508, 35509, 35510, 35511.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 2010.

Decided Nov. 3, 2010.

Raymond S. Franks II, West Virginia Department of Environmental Protection Office of Legal Services, Charleston, WV, for the Appellant, Randy C. Huffman, Cabinet Secretary, West Virginia Department of Environmental Protection, Office of Oil and Gas.

William V. DePaulo, Charleston, WV, for the Appellant, Sierra Club, Inc.

Thomas W. Rodd, The Calwell Practice, PLLC, Charleston, WV, for the Appellants, Cordie Hudkins, West Virginia Highlands Conservancy, and Friends of Blackwater.

Darrell V. McGraw, Jr., Attorney General, Thomas W. Smith, Managing Deputy Attorney General, Charleston, WV, for the Appellant, West Virginia Division of Natural Resources.

Timothy M. Miller, Benjamin W. Price, Robinson & McElwee PLLC, Charleston, WV, for the Appellee, Cabot Oil & Gas Corporation.

Larry W. George, Law Office of Larry W. George, PLLC, Charleston, WV, for the Appellee, Lawson Heirs, Inc.

David L. Yaussy, Robinson & McElwee PLLC, Charleston, WV, for Amicus Curiae, West Virginia Farm Bureau.

PER CURIAM:

The appellants in these four consolidated cases, Randy Huffman, Cabinet Secretary of the West Virginia Department of Environmental Protection, Office of Oil and Gas (hereinafter referred to as "DEP Office of Oil and Gas"); the West Virginia Division of Natural Resources (hereinafter referred to as "DNR"); the Sierra Club, Inc. (hereinafter referred to as "Sierra Club"); and Cordie O. Hudkins, West Virginia Highlands Conservancy, Inc., and Friends of Blackwater (hereinafter collectively referred to as "Friends of Blackwater"), appeal from an order entered June 17, 2009, by the Circuit Court of Logan County. By that order, the circuit court vacated an earlier order of the DEP Office of Oil and Gas, which ruling had refused to issue five oil and natural gas well drilling permits. The circuit court further directed the DEP Office of Oil and Gas to issue the requested permits to allow development of said wells in Chief Logan State Park by the appellee, Cabot Oil & Gas Corporation (hereinafter referred to as "Cabot"), under its lease of the subject mineral rights from the appellee, Lawson Heirs, Inc. (hereinafter

referred to as "Lawson Heirs").[1] On appeal to this Court, the parties [2] dispute whether the requested permits should be issued. Upon a review of the parties' arguments, the record presented for appellate consideration, and the pertinent authorities, we affirm the circuit court's June 17, 2009, order.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The instant controversy has its origins in a 1960 deed between the Lawson Heirs and the Logan Civic Association, and legislation that was enacted after the subject deed's execution. Since the early 1800s, the ancestors of the Lawson Heirs have owned substantial land holdings in present-day Logan County, West Virginia, title to which has, through time, passed to the Lawson Heirs. In 1960, the Lawson Heirs and the Logan Civic Association began negotiations about forming a West Virginia state park in Logan County. Through these discussions, the Logan Civic Association acted on behalf of the West Virginia Conservation Commission (hereinafter referred to as "Conservation Commission"), which entity is the predecessor to the West Virginia Division of Natural Resources (DNR), who is an appellant in the instant proceedings.

On November 18, 1960, the Lawson Heirs conveyed 3,271 acres of surface land and coal to the Logan Civic Association for $90,000. In the deed memorializing this conveyance, the Lawson Heirs explicitly reserved the property's oil and gas rights as well as the ability to drill wells for the extraction and production of these resources:

There is excepted and reserved from this conveyance all oil and gas, or either, within and underlying the lands hereby conveyed, with the right to search for, explore, operate for, drill, produce and market oil, gas and gasoline, together with the rights of way and servitude for the laying of pipe lines, building telephone and telegraph lines, structures, plant houses, drips, tanks, stations, electric power lines, meters, and regulators, and all other rights and privileges necessary and incident to and convenient for the economic operation of excepted oil and gas, or either, and the rights excepted and reserved and the care of the excepted products.

The excepted rights of way and servitudes may also be used by the party of the first part [the Lawson Heirs], its successors, assigns, and lessees, for search for, exploring, operating for, drilling, producing, and marketing oil, gas, or gasoline from other lands owned or held under lease.

Also contained in the deed is the recognition that the subject property was intended to be used as a West Virginia state park. To this end, the deed contemplated this use and explained, in great detail, that

[n]o well shall be drilled, without the consent in writing of the party of the second part [Logan Civic Association], its successors or assigns, first had and obtained, within one thousand (1,000) feet of any building or structure, tipple, shaft, air shaft, or lake; within two hundred (200) feet of any existing or projected entry, road, riding trial, haulway, or air course of any mine in operation, any of which is now or may hereafter be constructed upon the premises hereby conveyed; or within the view or site of any overlook that has been developed for public use; provided, however, that neither the party of the first part, its successors, assigns, or lessees, shall in any event be required to remove any equipment, facility, or installation by reason of these restrictions, if at any time the same are constructed or installed, the location thereof complied with the requirements herein set forth.

No road, power line, pipe line, or telephone line shall be constructed without the prior written approval, as to location, of the Director of the Conservation Commission

---

1. The Lawson Heirs, Inc., is a corporation formed to represent the interests of the heirs of Anthony Lawson, who was one of the first English settlers of present-day Logan County, West Virginia.

2. We wish also to acknowledge the posture of the West Virginia Farm Bureau as an Amicus Curiae in these consolidated cases and to thank the Bureau for its participation in these proceedings.

of West Virginia, or his authorized representative, but such written approval shall not be unreasonably or arbitrarily withheld. Any timber that is cut in the construction of any of the above shall be sawed into standard log lengths and left along the right of way. This timber shall be the property of the party of the second part, its successors or assigns.

What timber is cut, in addition to being sawed into logs, the trees shall be trimmed and the branches stacked and piled in accordance with the rules and regulations of the Director of the Conservation Commission of West Virginia, its successors or assigns. Where timber is cut for rights of way for pipe line, or power or telephone lines, the rights of way shall be cleared for reseeding.

When in the exercise of any of the rights excepted or reserved it becomes necessary to expose the mineral soil, such shall be reseeded in manner that is approved in writing by the Director of the Conservation Commission of West Virginia, or his authorized representative, after the purpose of such exposure has been accomplished.

All abandoned roads shall be treated in the manner approved by the Conservation Commission of West Virginia.

Furthermore, the deed specified the manner in which the Lawson Heirs would exercise their oil and gas rights and the manner in which such wells would be developed.

Following this initial conveyance, the Logan Civic Association conveyed the entire parcel to the State of West Virginia for the benefit of the Conservation Commission, with said property to be managed first as Chief Logan Recreation Area and later as Chief Logan State Park.[3] Chief Logan Recreation Area opened to the public in 1961.

Also in 1961, the West Virginia Legislature passed W. Va.Code § 20–4–3 (1961) (Repl. Vol.1961), which became effective on July 1, 1961. W. Va.Code § 20–4–3, which is the predecessor to present W. Va.Code § 20–5–

2(b)(8) (2006) (Repl.Vol.2008), provided, in relevant part:

The purpose[ ] of [a state park and public recreation system] shall be to promote conservation by preserving and protecting natural areas of unique or exceptional scenic, scientific, cultural, archaeological or historic significance, and to provide outdoor recreational opportunities for the citizens of this state and its visitors. *In accomplishing such purposes the director [of the DNR]* shall, insofar as is practical, maintain in their natural condition lands that are acquired for and designated as state parks, and *shall not permit* public hunting, *the exploitation of the minerals* or harvesting of timber thereon for commercial purposes.

(Emphasis added). In 1995, the Legislature re-codified this language at W. Va.Code § 20–5–2. The present version of W. Va. Code § 20–5–2(b)(8) (2006) (Repl.Vol.2008), which version was in effect at the time Cabot requested issuance of the five well permits at issue herein, provides, in pertinent part:

(b) The Director of the Division of Natural Resources shall:

. . . .

(8) Propose rules for legislative approval in accordance with the provisions of article three [§ 29A–3–1 et seq.], chapter twenty-nine-a of this code to control the uses of parks: Provided, That *the director may not permit* public hunting, except as otherwise provided in this section, *the exploitation of minerals* or the harvesting of timber for commercial purposes *in any state park* [.]

(Emphasis added).

As contemplated by the above-quoted deed, the Lawson Heirs ultimately exercised their reserved oil and gas rights and leased the same to Cabot. On November 21, 2007, Cabot filed five well work permit applications with the DEP Office of Oil and Gas, as required by W. Va.Code § 22–6–11 (1994) (Repl.Vol.2009),[4] seeking to drill wells to de-

---

**3.** Initially, this property was designated as "Chief Logan Recreation Area." In 1969, the area was accorded state park status and was renamed "Chief Logan State Park."

**4.** W. Va.Code § 22–6–11 (1994) (Repl.Vol.2009) sets forth guidelines for the issuance of a well work permit.

velop the oil and gas reserves underneath Chief Logan State Park. By order dated December 12, 2007, the DEP Office of Oil and Gas denied the permits requested by Cabot basing its decision upon the prohibitions on state park mineral exploitation contained in W. Va.Code § 20–5–2(b)(8). In rendering its ruling, the DEP Office of Oil and Gas explained that

> [a]lthough the legislative prohibition [of W. Va.Code § 20–5–2(b)(8) pertaining to the Division of Natural Resources] is not directed squarely at the Department [of Environmental Protection], the Secretary [of the Department of Environmental Protection] may nonetheless take note of it in accordance with West Virginia Code § 22–1–6(c)(1), which charges her with the duty to assure, among other things, that the Department "carries out its functions in a manner which supplements and complements the environmental policies, programs and procedures of ... other instrumentalities of this state[.]"

From this adverse decision, Cabot appealed to the Circuit Court of Logan County.

Although the initial permit application administrative process involved only Cabot and the DEP Office of Oil and Gas, numerous other entities sought to intervene in the circuit court proceedings and were granted intervenor status. Before it entered its order upon Cabot's appeal from the DEP Office of Oil and Gas, the circuit court permitted the Lawson Heirs to intervene because their interests are directly aligned with those of Cabot. After the entry of its order, the circuit court afforded intervenor status to the Sierra Club and Friends of Blackwater, in recognition of their efforts to conserve the parks of this State, and to the DNR, given its role as the body charged with enforcing the provisions of W. Va.Code § 20–5–2(b)(8).

By order entered June 17, 2009, the circuit court reversed the ruling of the DEP Office of Oil and Gas and directed that body to issue the permits requested by Cabot. In reaching this decision, the circuit court considered the DEP Office of Oil and Gas' reliance on W. Va.Code § 20–5–2(b)(8) and concluded that

[t]he DEP [Department of Environmental Protection] exceeded its statutory authority and erred as a matter of law by relying upon the DNR statute to deny the well work permit applications. The DEP has no authority under W. Va.Code § 20–5–2(b)(8), and that statute applies only to limits on the proposed rules the Director of DNR may promulgate.

None of the statutory authority delegated to the DEP's OOG [Office of Oil and Gas], including W. Va.Code § 22–1–6(c)(1), authorizes the DEP's OOG to "take note", adopt or infer the statutory limit on rulemaking granted to the DNR to prohibit the exploitation of minerals for commercial purposes in state parks.

In addition, the DEP erred as a matter of law in denying the well work permit applications as such denial was not based upon its statutory authority under W. Va. Code § 22–6–1 et seq.

Even if it were authorized to use the DNR statutes, the DEP erred as a matter of law in denying the well work permit applications based upon W. Va.Code § 20–5–2(b)(8). That section states that the Director of the Division of Natural Resources "may not permit ... the exploitation of minerals ... for commercial purposes in any state park[.]" The DEP erroneously interpreted § 20–5–2(b)(8) by holding that it prohibits the exploitation of minerals not owned by the state.

. . . .

W. Va.Code § 20–5–2(b)(8) clearly does not apply to minerals not owned by the state. To apply it otherwise would deprive the mineral owners of their private property rights and would be blatantly unconstitutional. By drafting specific legislation to preclude the Director of the DNR from permitting the exploitation of minerals for commercial purposes in any state park, the legislature likely intended to reserve unto itself the ability to decide when state owned minerals could be produced or sold. It was likely not the legislature's intent to bar any and all exploitation of minerals in state parks whether state-owned or privately-owned.

The interpretation of *W. Va.Code* § 20–5–2(b)(8) applied by the DEP, would result in the taking of the valuable property rights reserved by the Lawson Heirs, and the lease rights granted to Cabot. Such an interpretation would run afoul of multiple provisions of the Constitution of West Virginia.

. . . .

The interpretation of the DEP permitting statute and the DNR statute relied upon by the DEP, cannot withstand scrutiny under due process or equal protection grounds [under Article III, Section 10 of the West Virginia Constitution]. The interpretation offered by the OOG would result in a taking of property if the permit denials were upheld.

. . . .

If the DEP permit denial[s] were upheld, both Lawson Heirs and Cabot would be deprived of substantial private property rights without due process, and without just compensation being offered [contrary to Article III, Section 9 of the West Virginia Constitution]. The DEP permit denial would constitute an inverse condemnation or regulatory taking since it clearly would prohibit the development of the oil and gas estate and would take away substantial private property rights which were previously recognized by the State, when it obtained title to the property which became Chief Logan State Park.

The DEP's interpretation of the DEP permitting statute and the DNR statute is also violative of Article III, Section 4 of the Constitution of West Virginia, which provides that no bill or law impairing the obligation of a contract shall be passed by the Legislature. If the Court were to uphold the interpretation of the DEP, such would be in effect a law impairing the terms of the 1960 deed. The DEP application of the DNR statute would then mean the DNR statute is a law impairing the obligation of the deeds and property rights reserved by the Lawson Heirs, and leased to Cabot.

In light of the record of the OOG and DNR allowing the operation of other gas wells in other state parks, and in light of the clear and unambiguous provisions of the deeds which reserved the grant of gas wells and rights of way to Chief Logan State Park, the Court also finds that the permit denials should be reversed as a matter of equity.

Any searching, exploring, operation, drilling and/or production of oil or gas pursuant to the permits at issue here remain subject to the restrictions set forth in the November 18, 1960 deed of the Park property . . . and is subject to other applicable rules administered by the DEP's Office of Oil and Gas.

From this adverse ruling, the various appellants appeal to this Court.

## II.

### STANDARD OF REVIEW

 In the case *sub judice*, the appellants challenge the circuit court's order reversing the administrative decision of the DEP Office of Oil and Gas. We previously have held that,

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo;* findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). More specifically,

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of West Virginia Human Rights Comm'n,* 172 W.Va. 627, 309 S.E.2d 342 (1983).

■ With specific respect to the circuit court's ruling in this case, which reversed the prior order of the DEP Office of Oil and Gas, we accord deference to the court's order, as a whole, and conduct a plenary review of the circuit court's decision of the case's legal issues: "[i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo.*" Syl. pt. 2, *Muscatell,* 196 W.Va. 588, 474 S.E.2d 518.

■ Likewise, the questions presented by the case *sub judice* requiring an interpretation of the language of the 1960 deed between the Lawson Heirs and the Logan Civic Association are reviewed *de novo. See, e.g., Zimmerer v. Romano,* 223 W.Va. 769, 777, 679 S.E.2d 601, 609 (2009) (per curiam) (applying *de novo* standard of review to lower court's interpretation of deed); *HN Corp. v. Cyprus Kanawha Corp.,* 195 W.Va. 289, 294, 465 S.E.2d 391, 396 (1995) (per curiam) ("Whether a contract is ambiguous is a legal question reviewable by this Court *de novo.*" (citation omitted)). By the same token, those issues pertaining to the construction and application of statutory law to the facts before us also are afforded a plenary review. *See, e.g.,* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,*

194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

In keeping with these standards, we proceed to consider the errors assigned by the parties.

## III.

## DISCUSSION

On appeal to this Court, the various appellants assign error to the circuit court's order wherein it reversed the ruling of the DEP Office of Oil and Gas and directed that body to issue the well permits requested by Cabot. In reaching its decision, the circuit court determined that the DEP Office of Oil and Gas' reliance on W. Va.Code § 20–5–2(b)(8), which governs the DNR's actions, was misplaced and was not a valid basis upon which to deny the subject permits. The circuit court further found denial of the permits to be violative of numerous rights secured by the West Virginia Constitution and contrary to equitable principles. Before this Court, the appellants, *i.e.,* the DEP Office of Oil and Gas, the DNR, the Sierra Club, and Friends of Blackwater, contend that the circuit court erred in its decision insofar as the well permits requested by Cabot would entail drilling within Chief Logan State Park and W. Va. Code § 20–5–2(b)(8) expressly prohibits the drilling of oil and gas wells in West Virginia state parks.[5] The appellees, *i.e.,* Cabot and the Lawson Heirs, respond that the circuit court properly ruled that the DEP Office of Oil and Gas cannot rely on W. Va.Code § 20–5–2(b)(8) to deny the requested permits because this statute governs the actions of the Division of Natural Resources, not those of the Department of Environmental Protection. Cabot and the Lawson Heirs further

---

5. The Friends of Blackwater appellants also voice concern that the circuit court directives to the DEP Office of Oil and Gas to issue the permits requested by Cabot will violate 16 U.S.C. § 460*l*-8(f)(3) (1996) (2006 ed.) which prohibits the use of property obtained with federal assistance from the Department of the Interior from being used for any purpose other than "public outdoor recreation uses." However, for the same reasons we find W. Va.Code § 20–5–2(b)(8) to be inapplicable to the 1960 deed between the Lawson Heirs and the Logan Civic Association, *see* Section III, *infra,* we likewise find this provision does not apply to the facts before us insofar as the predecessor to the present federal statute was first enacted *after* the parties had executed said deed. *See* 16 U.S.C. § 460*l*-6 (1961).

suggest that the appellants are estopped from adopting a position that interferes with their ability to drill wells in Chief Logan State Park given that the 1960 deed specifically reserves the Heirs' oil and gas rights as well as the right to develop the same.

The pivotal question determinative of these consolidated appeals is this: does the statutory provision prohibiting the DNR from authorizing mineral exploitation within West Virginia state parks, *i.e.,* W. Va.Code § 20–5–2(b)(8), preclude the issuance of the well permits for which Cabot has applied? Simply stated, the answer is "no." We find that W. Va.Code § 20–5–2(b)(8) has no preclusive effect upon the requested permits herein insofar as this statutory language was enacted *after* the 1960 deed conveying the subject property was executed. As such, W. Va. Code § 20–5–2(b)(8) cannot be applied to retroactively modify the parties' written agreement memorialized in their deed.

 In the present appeals, the 1960 deed reflects the agreement of the Lawson Heirs and the Logan Civic Association vis-a-vis the oil and gas rights underlying the property conveyed therein. As such, the 1960 deed is a contract. We previously have recognized that

> deeds, like any other written agreement, are the repository of the contract. Indeed, they are much more solemn than the usual unsealed agreement not acknowledged for record. They are a solemn declaration of all the covenants comprised in them or intended to be made between the parties, and none other.... A deed is a writing to prove and testify the agreement of the parties thereto to the things therein contained.

*Southern v. Sine,* 95 W.Va. 634, 638, 123 S.E. 436, 437–38 (1924) (citations omitted). In short, "[a] deed is an instrument executed with formality, and imports full and complete exposure of the intent of the parties. It speaks the final agreement by the clearest and most satisfactory evidence." *Donato v. Kimmins,* 104 W.Va. 200, 204, 139 S.E. 714, 715 (1927).

 Because the 1960 deed is a written, contractual agreement reflecting the parties' intent, the law of contract construction governs our analysis. When the language used in a contract is plain and unambiguous, courts are required to apply, not construe, the contract.

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company,* 147 W.Va. 484, 128 S.E.2d 626 (1962).

Syl. pt. 1, *Sally–Mike Props. v. Yokum,* 175 W.Va. 296, 332 S.E.2d 597 (1985). *Accord* Syl. pt. 2, *Orteza v. Monongalia Cnty. Gen. Hosp.,* 173 W.Va. 461, 318 S.E.2d 40 (1984) ("'Where the terms of a contract are clear and unambiguous, they must be applied and not construed.' Syl. Pt. 2, *Bethlehem Mines Corp. v. Haden,* 153 W.Va. 721, 172 S.E.2d 126 (1969)."). *But see, e.g., Estate of Tawney v. Columbia Natural Res., L.L.C.,* 219 W.Va. 266, 272, 633 S.E.2d 22, 28 (2006) ("[W]hen a contract is ambiguous, it is subject to construction."). Furthermore,

> "[i]n construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith." Pt. 1, syllabus, *Maddy v. Maddy,* 87 W.Va. 581[, 105 S.E. 803 (1921) ].

Syl. pt. 5, *Hall v. Hartley,* 146 W.Va. 328, 119 S.E.2d 759 (1961).

 Where the contractual language is clear, then, such language should be construed as reflecting the intent of the parties; courts are not at liberty to, *sua sponte,* add to or detract from the parties' agreement. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626. Rather,

"[a]n unambiguous written contract entered into as the result of verbal or written negotiations will, in the absence of fraud or mistake, be conclusively presumed to contain the final agreement of the parties to it, and such contract may not be varied, contradicted or explained by extrinsic evidence of conversations had or statements made contemporaneously with or prior to its execution." Point 2 Syllabus, *Kanawha Banking and Trust Company v. Gilbert*, 131 W.Va. 88 (46 S.E.2d 225) [ (1947) ]. Syl. pt. 1, *Traverse Corp. v. Latimer*, 157 W.Va. 855, 205 S.E.2d 133 (1974).

Under the facts of the case *sub judice*, the parties do not dispute the language employed in the deed nor the intent of the parties expressed therein. All agree that the 1960 deed reserves unto the Lawson Heirs the oil and gas rights underlying the conveyed property and that, by virtue of and in addition to such reservation, the Heirs also retain the ability to extract those minerals. In light of this unambiguous contract language, we next must determine what effect, if any, the prohibitions of W. Va.Code § 20–5–2(b)(8) have upon the 1960 deed. Typically, the law that is in effect at the time a contract is executed is the law that thereafter applies to and governs the parties' agreement. In other words, "[t]he laws which subsist at the time and place where a contract is made and to be performed enter into and become a part of it to the same extent and effect as if they were expressly incorporated in its terms." Syl., *Franklin Sugar Ref. Co. v. Martin–Nelly Grocery Co.*, 94 W.Va. 504, 119 S.E. 473 (1923).

Here, the Lawson Heirs and the Logan Civic Association executed a deed in 1960 for property that was ultimately to become Chief Logan State Park. The statute relied upon by the DEP Office of Oil and Gas and the DNR as a basis for denying the well permits requested by Cabot to develop the minerals reserved in the 1960 deed was enacted in 1961 *after* the 1960 deed had been executed. There is no indication that the Legislature intended either the 1961 original version of this statutory language, *i.e.*, W. Va.Code § 20–4–3, or its subsequent recodified version, *i.e.*, W. Va.Code § 20–5–2(b)(8), to be applied retroactively. Absent a direct expression of such intent by the Legislature, we are constrained to apply the law in effect at the time of the deed's execution. *See* Syl. pt. 1, *Loveless v. State Workmen's Comp. Comm'r*, 155 W.Va. 264, 184 S.E.2d 127 (1971) (" 'The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect.' Pt. 4, syllabus, *Taylor v. State Compensation Commissioner*, 140 W.Va. 572[, 86 S.E.2d 114 (1955) ].")). *See also* Syl. pt. 2, *Smith v. West Virginia Div. of Rehab. Servs. & Div. of Pers.*, 208 W.Va. 284, 540 S.E.2d 152 (2000) (" 'A statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application.' Syllabus Point 2, *Public Citizen, Inc. v. First National Bank in Fairmont*, 198 W.Va. 329, 480 S.E.2d 538 (1996).")). Because W. Va.Code § 20–5–2(b)(8) and its predecessor were not in effect at the time of the 1960 deed's execution, they cannot be applied to bar the issuance of the requested well permits. Accordingly, we affirm the circuit court's ruling finding the DEP Office of Oil and Gas' reliance on W. Va.Code § 20–5–2(b)(8) to be misplaced because such statute was not effect at the time of, nor does it govern, the 1960 deed.[6] We further affirm the circuit court's order directing the DEP Office of Oil and Gas to grant Cabot the five well permits it requested to allow Cabot to develop the oil and natural gas reserves re-

---

6. Although the basis for this Court's affirmance of the circuit court's decision is slightly different than the reasons relied upon by the circuit court in rendering its ruling, such a divergence is permitted. Syl. pt. 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

tained by the Lawson Heirs in their 1960 deed.

## IV.

## CONCLUSION

For the foregoing reasons, the June 17, 2009, order of the Circuit Court of Logan County is hereby affirmed.

Affirmed.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision of this case.