# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0006** (Pocahontas County 13-F-42(D))

**Megan J. Stewart,**
**Defendant Below, Petitioner**

**FILED**

**January 14, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Megan J. Stewart, by counsel Eric M. Francis, appeals the Circuit Court of Pocahontas County's December 14, 2017, order dismissing her criminal proceedings following her successful completion of a drug court program. The State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the court erred in refusing to expunge her underlying convictions from her criminal record, thus depriving her of the benefit of the bargain of the plea agreement at issue.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2013, petitioner was indicted for multiple crimes related to the transportation of controlled substances into a correctional facility. In January of 2014, petitioner entered into a plea agreement whereby she was permitted to participate in drug court in exchange for her entry of guilty pleas to both counts in the indictment. The plea agreement contained the following language:

> RESOLUTION OF CHARGES: [Petitioner] will plead guilty as charged to the felony offense of Transporting a Controlled Substance into a State Correctional Facility and Conspiracy to Commit a Felony as contained within the indictment charging [petitioner]. The parties will jointly recommend that the Court delay sentencing on [petitioner's] guilty plea until [petitioner] successfully completes, or is otherwise discharged, from the Drug Court Program, contingent upon her acceptance in Drug Court in Raleigh County or in any other county accessible to her home county of Wyoming. The parties further resolve and recommend that, if successful in the aforementioned program, [petitioner] may introduce evidence thereof in mitigation of punishment by the Court at a subsequent sentencing

1

hearing. The State of West Virginia believes that although the [petitioner] Megan J. Stewart committed the felonies as charged and the State of West Virginia believes that should this matter proceed to trial that Ms. Stewart would be convicted upon jury trial; the State of West Virginia likewise believes that there were special and extenuating circumstances involving Ms. Stewart's participation in the events which gave rise to the charges herein and the State believes that the discharge of her sentence in the manner set forth in this agreement is in the best interests of the [petitioner] and the public's interest in the just administration of the law, and that the State believes that the public interest would not be served by the confinement of Megan Stewart to an incarceration term in the regional jail nor in the penitentiary. If [petitioner] is discharged, or voluntarily withdraws, from the Drug Court program prior to successful graduation, this matter shall be returned to the active docket and jurisdiction of this Court, and the Court may proceed with sentencing. Furthermore, it is understood and acknowledged by [petitioner] that a discharge or voluntary withdrawal from the Drug Court is not sufficient cause to withdraw [petitioner]'s plea, and [petitioner] hereby waives any right to move to withdraw the plea as a result of any discharge or voluntary withdrawal from Drug Court. In the event that the plea is permitted to be withdrawn for any other reason, the State may reinstitute any criminal charges pending against [petitioner] at the time this agreement was entered.

The plea agreement also plainly stated that "[t]his written agreement constitutes the entire agreement between the State and [petitioner] in this matter."

By order entered in February of 2014, the circuit court[1] accepted petitioner's guilty pleas and ordered that, pursuant to the plea agreement, petitioner would be "transferred to the jurisdiction of the Wyoming County Drug Court which is currently being implemented. . . ." The circuit court further ordered that "upon termination or completion of the Drug Court Program by the [petitioner], the [petitioner] shall be returned to the jurisdiction of this Court for final sentencing."

However, at a hearing in December of 2014, the circuit court noted that Wyoming County's drug court program was not yet operational. As such, the circuit court proceeded to sentence petitioner to a term of incarceration of two to ten years for her conviction of one count of transporting controlled substances into a state correctional facility and a term of incarceration of one to five years for her conviction of conspiracy, said sentences to run concurrently. Further, the circuit court specifically ruled that it would "defer or delay the imposition of this sentence" until a later hearing date, at which point petitioner would be required to "demonstrat[e] . . . first a seriousness about dealing with [her] history of drug use, and secondly mak[e] out a case for some alternative sentence program." But, as the circuit court reiterated, "as far as I can determine, there is no alternative sentence in Wyoming County. . . ."

---

[1]At this time, petitioner's criminal trial was presided over by the Honorable James J. Rowe.

2

In February of 2015, the parties came on for a hearing, during which petitioner informed the circuit court that she recently moved to Summers County, West Virginia, and that the drug court program in that county was willing to accept her. The circuit court set a deadline of February 6, 2015, at which point petitioner would be required to self-report to the regional jail to begin serving her sentence if she had not yet secured placement in the Summers County drug court program. That deadline was later extended to February 20, 2015. Petitioner was able to secure her placement in the program and thereafter participated in the program for the next two years.

In February of 2017, petitioner was released from the Summers County drug court program after her successful completion of that program. That same month, the circuit court[2] conducted a dispositional hearing following petitioner's release. During the hearing, petitioner requested that "the original drug court agreement be honored" by permitting her to withdraw her guilty pleas and dismissing the case. According to petitioner, "it was the representation of the former Assistant Prosecuting Attorney that the felony charges would be dismissed" after her successful completion of the drug court program. During the hearing, the State agreed that petitioner should be entitled to dismissal of the charges against her. In fact, the prosecuting attorney, although not personally involved in the formation of the plea agreement at issue, indicated that "the State's understanding the whole time" was that petitioner would have the charges against her dismissed entirely. However, the circuit court disagreed with this interpretation of the written plea agreement and indicated that it specified only that petitioner would be permitted to discharge her sentence by way of participating in drug court as an alternative sentence to incarceration. Due to the lengthy procedural history of the matter, the circuit court continued the hearing to give the parties additional time to address the issue.

In October of 2017, the circuit court held another dispositional hearing, during which petitioner presented testimony from Robert Martin, the former assistant prosecuting attorney who entered into the plea agreement with petitioner. During Mr. Martin's testimony, the circuit court asked the following: "What was the intent of the parties [to the plea agreement] based upon [petitioner's] success or lack of success in drug court? Do you recall?" Mr. Martin responded: "No, I don't." Following this hearing, petitioner filed a motion for the circuit court to enter a "corrective order" in regard to the acceptance of the original plea agreement that would allow petitioner to "receive the benefit of the plea bargain that she has fulfilled." Specifically, petitioner again requested that the circuit court permit her to withdraw her guilty pleas and have the charges against her dismissed.

Thereafter, the circuit court entered an order denying petitioner's motion. Relying on Rule 32(e) of the West Virginia Rules of Criminal Procedure and this Court's holding in *State v. Harlow*, 176 W.Va. 559, 346 S.E.2d 350 (1986), the circuit court found that "after a Defendant has been sentenced, a motion for withdrawal of a plea of guilty may only be set aside on direct appeal or by petition under West Virginia Code § 53-4A-1." Because petitioner in this matter had previously been sentenced in January of 2015, the circuit court found that it lacked jurisdiction to

---

[2]At this time, petitioner's criminal trial was presided over by the Honorable Jennifer P. Dent.

permit withdrawal of the guilty pleas. Moreover, the circuit court found that, although it had authority to "amend its records to accord with the facts in both criminal and civil cases[,]" it ultimately did not "find inconsistencies to justify the entry of a Corrected Order." In making this determination, the circuit court noted that the plain language of the plea agreement "contemplated the entry of . . . pleas, the acceptance of the pleas by the Court and that the [petitioner] may introduce evidence of her successful completion of Drug Court in mitigation of punishment . . . at a subsequent sentencing hearing." Importantly, the circuit court found that "[t]here is no provision in the Plea Agreement for a withdrawal of the [petitioner's] guilty pleas and dismissal of the case upon completion of Drug Court." Instead, the plea agreement "contemplated . . . that a sentence will be imposed based on the Court's consideration of mitigating circumstances." Given that petitioner had already been sentenced, had that sentence deferred, and successfully completed the drug court program, as contemplated, the circuit court found that petitioner was returned to its jurisdiction for final disposition. Further, as contemplated by the agreement, petitioner was permitted to introduce evidence of her successful completion of the drug court program. As such, the circuit court denied petitioner's motion.

In November of 2017, the circuit court held a final hearing in the matter during which the State moved to dismiss the matter upon petitioner's successful completion of the drug court program. The circuit court found that petitioner "successfully completed the sentence previously imposed" and granted the State's motion. The circuit court memorialized these findings in its December 14, 2017, final order. It is from this order that petitioner appeals.

This Court has previously established the following standard of review:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *State v. Hinchman*, 214 W.Va. 624, 591 S.E.2d 182 (2003).

Syl. Pt. 1, *State v. Seen*, 235 W.Va. 174, 772 S.E.2d 359 (2015). Moreover,

> "[c]ases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law

4

that is reviewed *de novo*." Syllabus Point 1, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995).

Syl. Pt. 1, *State v. Palmer*, 206 W.Va. 306, 524 S.E.2d 661 (1999).

Upon our review, we find no error. In regard to the first determination concerning the factual questions regarding the terms of the plea agreement at issue, this Court concludes that the circuit court was correct in its findings. Importantly, the plea agreement does not contain any language that could reasonably be construed as requiring that petitioner be permitted to withdraw her pleas to the charges at issue and have her convictions entirely expunged. On the contrary, as the circuit court found, the plea agreement explicitly "contemplated the entry of . . . pleas, the acceptance of the pleas by the Court and that the [petitioner] may introduce evidence of her successful completion of Drug Court in mitigation of punishment by the Court at a subsequent sentencing hearing." We agree that nothing in the plea agreement permitted petitioner to withdraw the pleas. Instead, it is clear, as the circuit court found, that "what is contemplated is that a sentence will be imposed based on the Court's consideration of mitigating circumstances" which, in this case, included her successful completion of the drug court program.

On appeal, petitioner repeatedly urges this court to ensure that she receive "the benefit of the full bargain" between her and the State. Citing to the written plea agreement and testimony from the former assistant prosecuting attorney who formulated the plea agreement and entered into it on behalf of the State, petitioner argues that "it is clear that . . . the wishes of the parties when said arrangement was entered into" was that she be entitled to expungement of her convictions following successful completion of the drug court program. The record, however, does not support this position. As noted above, the assistant prosecuting attorney who entered into this plea agreement specifically testified that he did not recall the intention of the parties at the time they entered into the agreement. While it is true that the prosecuting attorney who handled the matter following petitioner's completion of drug court indicated that he believed full expungement had been the State's intention all along, this fact has no bearing on the formation of the plea agreement, as he was not the individual responsible for entering into the agreement and the plain language of the agreement itself does not provide for such a resolution.

In support of her position, petitioner argues that "plea agreements are generally governed by the same rules that apply to contracts." Indeed, "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State v. Shrader*, 234 W.Va. 381, 389, 765 S.E.2d 270, 278 (2014) (quoting *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995)). What petitioner fails to recognize, however, is that this Court has held as follows:

> "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syllabus point 3, *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962).

Syl. Pt. 3, *Cabot Oil & Gas Corp. v. Huffman*, 227 W.Va. 109, 705 S.E.2d 806 (2010). Here, there is no ambiguity in the language of the plea agreement, given that no portion thereof provides for petitioner to withdraw her guilty pleas so that her convictions can be expunged. On the contrary, the plea agreement expressly provided for petitioner to complete the drug court program and have her successful completion considered as a mitigating factor in imposing her ultimate punishment.[3]

While petitioner argues that she believed the terms of the plea agreement permitted her to ultimately withdraw her guilty pleas, we have held that

> "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court." Syllabus Point 1, *Berkeley Co. Pub. Serv. v. Vitro Corp.*, 152 W.Va. 252, 162 S.E.2d 189 (1968).

Syl. Pt. 4, *Mylan Laboratories Inc. v. American Motorists Ins. Co.*, 226 W.Va. 307, 700 S.E.2d 518 (2010). Here, petitioner's interpretation of the terms of the plea agreement does not render the terms ambiguous. As set forth above, the terms of the plea agreement are explicitly clear, as the circuit court determined. Further, while petitioner seeks to rely on testimony concerning the parties' intent during the formation of the plea agreement, she fails to acknowledge that

> [a]n unambiguous written contract entered into as the result of verbal or written negotiations will, in the absence of fraud or mistake, be conclusively presumed to contain the final agreement of the parties to it, and such contract may

---

[3]In support of her argument that the plea agreement at issue permitted her to withdraw her guilty pleas following the successful completion of drug court, petitioner argues in her reply that she "is entitled to a sentencing hearing after she completed a drug court program. . . ." Because the circuit court sentenced petitioner prior to her enrollment in drug court, petitioner argues that "the agreement is not completed." This argument, however, ignores the reality that the sentences imposed in 2015 were deferred pending her enrollment in drug court and that she never served any period of incarceration under those sentences. Ultimately, petitioner received what she was entitled to under the plea agreement, which was the opportunity to participate in drug court and have her successful completion thereof considered in the circuit court's ultimate disposition of her criminal case. As noted above, following her successful completion of drug court, the circuit court found that petitioner "was permitted to serve her . . . sentence on the . . . Summers County Drug Court Program" and successfully completed the same. Given that petitioner successfully completed her sentence, the circuit court dismissed the matter. In short, petitioner received the most lenient sentence possible under the terms of the plea agreement, regardless of the fact that the original deferred sentence was entered prior to her enrollment in drug court. More importantly, the procedural issue of the circuit court's earlier imposition of sentence in 2015 has no bearing on petitioner's lone assignment of error concerning her assertion that the terms of the plea agreement permitted her withdrawal of her guilty pleas and a full expungement of the charges against her.

not be varied, contradicted or explained by extrinsic evidence of conversations had or statements made contemporaneously with or prior to its execution.

*Cabot*, 227 W.Va. at 111, 705 S.E.2d at 808, Syl. Pt. 4 (quoting Syl. Pt. 1, *Traverse Corp. v. Latimer*, 157 W.Va. 855, 205 S.E.2d 133 (1974)). Moreover, even if the Court were to consider extrinsic evidence of the plea agreement's formation, the record does not support petitioner's assertion that it was the parties' intent to permit her to withdraw her pleas, given the testimony from Mr. Martin wherein he indicated that he did not recall the parties' intentions.

Petitioner similarly relies upon our prior holdings to argue that the plea agreement should be strictly construed against the State, as the party that drafted the agreement.[4] Petitioner is correct, as we have held as follows:

"Due to the significant constitutional rights that a criminal defendant waives in connection with the entry of a guilty plea, the burden of insuring both precision and clarity in a plea agreement is imposed on the State. Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant." Syl. Pt 3, *State ex rel. Thompson v. Pomponio*, 233 W.Va. 212, 757 S.E.2d 636 (2014).

---

[4]Petitioner also argues that drug courts are authorized under West Virginia Code § 62-15-4 and that this statute should be strictly construed against the State because it is a penal statute. It is true that this Court has held that "[p]enal statutes must be strictly construed against the State and in favor of the defendant." Syl. Pt. 3, *State ex rel. Carson v. Wood*, 154 W.Va. 397, 175 S.E.2d 482 (1970). Assuming for the sake of argument that this is a penal statute, petitioner provides no supporting argument to establish how a strict construction of West Virginia Code § 62-15-4 would require the charges against her to be dismissed. According to West Virginia Code § 62-15-4-(g),

[u]pon successful completion of drug court, a drug offender's case shall be disposed of by the judge *in the manner prescribed by the agreement* and by the applicable policies and procedures adopted by the drug court. This may include, but is not limited to, withholding criminal charges, dismissal of charges, probation, deferred sentencing, suspended sentencing, split sentencing, or a reduced period of incarceration.

(Emphasis added). The statute is clear that the terms of the plea agreement itself set forth the manner in which the case must be disposed and it further provides for the outcome that was achieved herein; a suspended sentence and dismissal of the proceedings given petitioner's successful discharge of her sentence by way of completion of the drug court program. As such, it is clear that even a strict interpretation of the applicable statute would not result in the relief petitioner requests.

*Shrader*, 234 W.Va. at 382, 765 S.E.2d at 272, Syl. Pt. 5. Again, however, petitioner misapplies our prior holdings to the facts of the present case. As outlined above, there is no ambiguity in the terms of the plea agreement. Thus, there are no ambiguous terms which must be strictly construed against the State. Accordingly, we find that petitioner is not entitled to the relief requested.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 14, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
John A. Hutchison